UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY EDWARD VANDER SCHUUR,

    Plaintiff,

v.                                    Case No. 1:17-cv-522

                                    Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

## OPINION

Plaintiff brings this *pro se* action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied his claim for disability insurance benefits (DIB) and supplement security income (SSI).

Plaintiff alleged a disability onset date of March 31, 2010. PageID.224. Plaintiff identified his disabling conditions as: attention deficit hyperactivity disorder (ADHD); post-traumatic stress disorder (PTSD); schizotypal; avoidant personality; and narcissistic personality. PageID.228. Prior to applying for DIB and SSI, plaintiff completed the 12th Grade and had past employment as assembly/press operator and assembler/motor vehicle. PageID.109. An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on March 10, 2016. PageID.41-54. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the

Court for review. While plaintiff was represented by counsel during the administrative proceedings, he filed this appeal *pro se*.

## I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the

3

plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ's DECISION

Plaintiff's claim failed at the fourth step of the evaluation. At the first step, ALJ Condon found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 31, 2010, and that he met the insured status of the Social Security Act through December 31, 2015. PageID.43.

At the second step, the ALJ found that plaintiff had severe impairments of: bipolar disorder; schizotypal disorder; personality disorder, NOS; mood disorder, NOS; polysubstance dependence; and degenerative disc disease of the cervical and lumbar spine post lumbar laminectomy. PageID.43. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.44.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently. He can sit for up to 6 hours total and stand and/or walk for up to 6 hours total in an 8-hour workday. The claimant can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. He can frequently balance, stoop, kneel, crouch, and crawl. He is unlimited in his ability to push and pull up to the lifting and carrying limitations noted above. The claimant can have occasional exposure to fumes, odors, dusts, gases and areas of poor ventilation and occasional exposure to cold temperature. He can do no rotation of the head and neck greater than 45 to 50 degrees in either direction from a forward looking position. He can do occasional overhead reaching. The claimant is limited to doing simple, routine work that involves making simple work-related decisions and tolerating routine workplace changes. He can have occasional contact with the general public, coworkers, and supervisors.

PageID.45-46.

The ALJ also found that plaintiff was capable of performing his past relevant work as an assembler/press operator, work which does not require the performance of work-related activities precluded by his residual functional capacity (RFC). PageID.51.

The ALJ also found that plaintiff is capable of performing other jobs in the national economy and, in the alternative, continued to the fifth step, where he found that plaintiff could perform a significant number of unskilled jobs at the light exertional level. PageID.52-53. Specifically, the ALJ found that plaintiff could perform the requirements of light and unskilled occupations in the national economy such as assembler of small products (63,000 jobs), garment sorter (59,000 jobs), and folder (57,000 jobs). PageID.53. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from March 31, 2010 (the alleged onset date) through March 10, 2016 (the date of the decision). PageID.53-54.

### III. DISCUSSION

Plaintiff set forth five issues on appeal:

**A. The ALJ erred by assigning more than little weight to the assessment of Neil Reilly LLP and Dr. James Lozier (20 C.F.R. § 404.1527(c)(a), (d)(1), 20 C.F.R. § 404.1528(b)).**

Plaintiff contends that the March 22, 2013 assessment by Mr. Reilly and Dr. Lozier should have been assigned little weight because "[t]he records regarding this case do not include any other [psychological] testing or evidence submitted by Mr. Reilly" and that the "report contains internal inconsistencies" because it found that plaintiff's concentration level was grossly intact even though plaintiff's thought process was rather vague. Plaintiff's Brief (ECF No. 12, PageID.417).

The regulations provide that the agency will evaluate every medical opinion received "[r]egardless of its source," and that unless a treating source's opinion is given controlling

weight, the agency will consider the factors set forth in §§ 404.1527(c)(1)-(6) and 416.927(c)(1)-(6) in deciding the weight given to any medical opinion. *See* 20 C.F.R. §§ 404.1527(c) and 416.917(c). While the ALJ is required to give "good reasons" for the weight assigned a treating source's opinion, *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004), this articulation requirement does not apply when an ALJ rejects the report of a non-treating medical source. *See Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir. 2007). However, "the ALJ's decision still must say enough to allow the appellate court to trace the path of his reasoning." *Stacey v. Commissioner of Social Security*, 451 Fed. Appx. 517, 519 (6th Cir. 2011) (internal quotation marks omitted).

The ALJ addressed the Reilly/Lozier report as follows:

> In September 2013, the claimant participated in a psychological consultative examination with Neil Reilly, M.A. (Exhibit 3F). The claimant reported being depressed most of his life, and not being able to work currently has worsened it. The claimant reported sadness, crying spells, but no suicidal ideation. The claimant added he was not taking any medications. Mr. Reilly noted the claimant was cooperative, with clear speech and grossly intact understanding, memory and concentration, but a vague thought process. Mr. Reilly indicated the claimant had no evidence of psychosis, but did noted [sic] the claimant reported feeling anxious and agitated with a head that never shuts off. The claimant had some difficulty with immediate recall, but was able to recall three out of three objects following delay. The claimant was able to perform the remainder of the evaluation with unremarkable results. Mr. Reilly assessed the claimant with mood disorder, NOS; polysubstance dependence in partial remission; and personality disorder, NOS, but noted the difficulty to diagnoses due to the vagueness in the evaluation and the claimant's presentation was not really anxious or depressed (Exhibit 3F).
>
> \*   \*   \*
>
> After his September 2014 [sic] psychological examination, Mr. Reilly, whose assessment was cosigned by James Lozer, Ed.D., assigned the claimant a fair prognosis, a Global Assessment of Function (GAF) score of 55, and concluded his issues and conditions would not preclude him from employment (Exhibit 3F). The undersigned agrees with Dr. Lozer and Mr. Reilly's examination and diagnoses. However, the assessment does not contain much in a function-by-function analysis of what work related mental activities the claimant may have. The

6

undersigned notes Dr. Lozer and Mr. Reilly do not have the professional qualifications to opine on the claimant's physical limitations. Also, although GAF scores are generally one-time, subjective assessments that do not provide a complete assessment of the effects of an individual's impairments, the undersigned has given some weight to the GAF scores described above in determining the claimant's residual functional capacity. Overall, Dr. Lozer and Mr. Reilly's examination is given some weight, with more weight assigned to the GAF score which concludes the claimant has only moderate symptoms or moderate difficulty in social, occupational, or school functioning.

PageID.48-50 (footnote omitted).

Plaintiff claims that the Reilly/Lozier report was internally inconsistent because the report stated that plaintiff's "thought processes were rather vague" and later stated that plaintiff's "memory and concentration today were grossly intact." PageID.319. To the extent that plaintiff seeks to have this Court re-weigh the Reilly/Lozier report, this Court does not weigh the evidence. *Brainard*, 889 F.2d at 681. The issue before the Court is whether the ALJ's decision is supported by substantial evidence. The ALJ did not find the report internally inconsistent. This is not a case where an examining physician reported clearly contradictory findings or conclusions in the same report. Rather, plaintiff is contesting a psychologist's determination that his "memory and concentration . . . were grossly intact." Plaintiff has presented no medical evidence to establish an internal inconsistency in this determination. Finally, like other one-time consultations in disability cases, this report consisted of an in-person evaluation of the claimant. The ALJ has sufficiently articulated his reasons for giving some weight to the report. Accordingly, plaintiff's claim of error will be denied.

> **B.   The ALJ erred by assigning little weight to the assessment of Dr. Rochelle Manor Ph.D. (20 C.F.R. § 404.1527(d)(3), (d)(5), (d)(2)(ii), 20 C.F.R. § 404.1528(b), (c)).**

Plaintiff contends that the ALJ should have assigned more than "little weight" to Dr. Manor's January 22, 2015 assessment (as discussed below, the assessment as performed in

January 2014, not January 2015). Plaintiff's Brief at PageID.418-421. In this regard, plaintiff points out excerpts from the report of Dr. Rochelle Manor and Branden Lyon, Dr. Manor's credentials, and the scope of the Manor/Lyon assessment to support his contention that the ALJ should have assigned more than "little weight" to the report.

The ALJ addressed the Manor/Lyon report as follows:

> In January 2014, the claimant participated in an independent psychological evaluation with Rochelle Manor, Ph.D., and Branden Lyon, LMSW (Exhibit 4F). The claimant described his first psychotic "break" at age 17 and numerous episodes of psychotic thinking including having two personalities and dissociative experiences. Dr. Manor noted the claimant's experiences including his grandfather beating him at age four, abandonment by his mothers, and ex-wife committing suicide are related to PTSD. The claimant was noted to be tangential when talking with racing thoughts and fidgeting in his seat. The claimant's eye contact was intermittent and affect remained mostly anxious to blunted and tended to try to intellectualize questions or talk broadly about ways he discovered things about himself. Dr. Manor assessed treatment would be necessary for the claimant to assist in functioning and medication would help him take the edge off while become more stable emotionally and physically in developing coping strategies. The claimant was assessed with bipolar disorder, schizotypal personality disorder, and alcohol abuse/dependency (Exhibit 4F).

> \* \* \*

> After her January 2014 psychological evaluation, Dr. Manor and Mr. Lyon assessed the claimant with a GAF score of 28 and concluded the claimant could not work full time. Dr. Manor assessed the claimant struggles with his daily functioning too severely impaired to maintain full time employment and should receive SSDI. While the undersigned agrees with Dr. Manor's diagnoses, which is supported by the record as a whole and his reported activities of daily living, the severity of the impairments does not rise to the level that would preclude him from engaging in all work activity. Moreover, Dr. Manor's opinion does not provide an analysis of how the claimant would be limited in performing work related mental activities. The psychological evaluation took place after he applied for benefits and was a one-time assessment. The assigned GAF score is not indicative of the medical record as a whole, or the ongoing progress he has made through weekly counseling. A GAF score of 28 would suggest he has delusions, hallucinations, suicidal preoccupation, and inability to function, which the record does not support. For these reasons, the undersigned has assigned Dr. Manor's assessment little weight.

> Also, statements that a claimant is "disabled" or "unable to work," or the like, are not medical opinions but are administrative findings dispositive of a case,

requiring familiarity with the Regulations and legal standards set forth therein. Such issues are reserved to the Commissioner, who cannot abdicate the statutory responsibility to determine the ultimate issue of disability. Opinions on issues reserved to the Commissioner can never be entitled to controlling weight, but must be carefully considered to determine the extent to which they are supported by the record as a whole or contradicted by persuasive evidence (SSR 96-5p).

PageID.48, 50.

The ALJ has articulated sufficient reasons for giving little weight to the report. In this regard, the ALJ's decision noted that plaintiff's condition was not as serious as reflected in the Manor/Lyon report. After plaintiff filed his claim for benefits, he was assessed at the Montcalm Center for Behavioral Health where he admitted to an anger problem (i.e., "has lost several jobs by punching people"), but denied hallucinations, delusions, symptoms of PTSD, and suicidal/homicidal ideation. PageID.47-48, 301. The ALJ also noted that after the Manor/Lyon examination, plaintiff began weekly counseling sessions, where "[r]ecords through 2015 indicate mostly steady progress with some ambivalence" and that "his symptoms have been moderate with the conservative treatment without the need for emergency crisis treatment." PageID.48. Accordingly, plaintiff's claim of error will be denied.

   **C.  The ALJ erred by failing to consider all evidence in the claimant's case record (20 C.F.R. § 404.1520(a)).**

Plaintiff contends that the ALJ did not consider all of the evidence. To support his claim, plaintiff points out that the ALJ's list of severe impairments at step two did not include "anxiety", "depressive", "depression", or "major depression." Plaintiff's Brief at PageID.422. As discussed, the ALJ found at step two that plaintiff had severe impairments of: bipolar disorder; schizotypal disorder; personality disorder, NOS; mood disorder, NOS; polysubstance dependence; and degenerative disc disease of the cervical and lumbar spine post lumbar laminectomy. PageID.43.

9

Plaintiff's claim is without merit. Upon determining that a claimant has one severe impairment the ALJ must continue with the remaining steps in the disability evaluation. *See Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987). Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error. *Maziarz*, 837 F.2d at 244. An ALJ can consider such non-severe conditions in determining the claimant's residual functional capacity. *Id.* "The fact that some of [the claimant's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008).

Stated another way, when an ALJ finds one or more conditions to be severe impairments at step two, the failure to identify another condition as a severe impairment is legally irrelevant because the ALJ is required to consider the limiting effects of all impairments, "even those that are not severe", in crafting the RFC. *See Hedges v. Commissioner of Social Security*, 725 Fed. Appx. 394, 395 (6th Cir. 2018). That is how the ALJ proceeded in this case with respect to plaintiff's non-severe impairment of depression. While plaintiff did not list depression or anxiety on his disability report filed with the agency, PageID.228, the ALJ considered plaintiff's claim of depression. *See* PageID.48 (noting plaintiff's report to Mr. Reilly that he was "depressed most of his life"). As discussed, the Reilly/Lozier report found no evidence to support a diagnosis of depression:

> Mr. Vander Schuur is somewhat difficult to diagnose because he is rather vague about describing most everything. He did describe physical problems with pain but has no prescriptions and no diagnosis. With respect to his mood, he does not present as particularly anxious or depressed but there are issues that suggest a possible personality problem.

PageID.320.  Similarly, the Manor/Lyon report did not diagnose plaintiff with depression or anxiety, but diagnosed plaintiff with bipolar disorder, schizotypal personality disorder, and alcohol abuse/dependency.  PageID.327.  The record also reflects that the ALJ reviewed the listing for depressive disorder (Listing 12.04).  PageID.44.  Ultimately, the ALJ crafted an RFC based upon all of plaintiff's impairments supported by the evidence, including his mental impairments, which limited him "to doing simple, routine work that involves making simple work-related decisions and tolerating routine workplace changes," with only "occasional contact with the general public, coworkers, and supervisors."  PageID.46.  Accordingly, plaintiff's claim of error will be denied.

> **D.  The Appeals Council erred by denying claimant's request for review because the decision by the ALJ was not supported by substantial evidence (20 C.F.R. § 404.1527(c)(2), (d)(3), (d)(4), (d)(5), (f)(3)) (PageID.1).**
>
> **E.  The Appeals Council erred by denying claimant's request for review after receiving new and material evidence and their decision is contrary to the weight of all of the evidence now in the record. (20 C.F.R. § 404.1527(f)(3) (PageID.1).**

Finally, plaintiff seeks a reversal of the Appeals Council's decision denying his request for review.  There is no basis for the Court to review the denial of plaintiff's request for review at the Appeals Council.  "Only final decisions of the [Commissioner] are subject to judicial review under [42 U.S.C.] § 405(g)."  *Willis v. Secretary of Health and Human Services*, No. 93-6337, 1995 WL 31591 at * 2 (6th Cir.  1995), citing *Califano v. Saunders*, 430 U.S. 99, 108 (1977).  When the Appeals Council denies review, the decision of the ALJ becomes the final decision of the Commissioner.  *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993). While there is an exception for Appeals Council actions which involve colorable constitutional claims, plaintiff has not raised a constitutional challenge.  *See Temples v. Commissioner of Social Security*, 515 Fed. Appx. 460, 463 (6th Cir.2013) (court lacked

jurisdiction to review the Appeals Council's refusal to re-open the claimant's case because she did not raise any colorable constitutional claim); *Cottrell v. Sullivan*, 987 F.2d 342, 345 (6th Cir.1992) ("[a]bsent any colorable constitutional claim . . . a federal court has no jurisdiction to review the Appeals Council's decision not to reopen"). Accordingly, plaintiff's claims of error will be denied.

### IV. CONCLUSION

The ALJ's determination is supported by substantial evidence. The Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.

Dated: September 20, 2018 /s/ Ray Kent
United States Magistrate Judge